# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA R. COX, | ) |
| | ) |
|        Plaintiff, | ) |
| v. | )    Case No. CIV-12-272-RAW-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| **Acting Commissioner of the Social** | ) |
| **Security Administration,**[1] | ) |
| | ) |
|        Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Angela R. Cox requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on September 5, 1962, and was forty-eight years old at the time of the administrative hearing (Tr. 42, 150). She has a high school education and past relevant work as a cashier II, cashier, and checker bagger (Tr. 30, 43). The claimant alleges that she has been unable to work since February 1, 2007 because of the effects of a past stroke (Tr. 184).

**Procedural History**

On April 28, 2009, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 19). The Commissioner denied her applications. ALJ Michael A. Kirkpatrick conducted the administrative hearing and found that the claimant was not disabled in a written opinion dated January 4, 2011. (Tr. 19-32). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.1481; 416.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation, finding that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1529(b); 416.929(b) (Tr. 23). Due to mental impairments, the ALJ also found that the claimant should be limited to simple, unskilled tasks which do not require interaction with the general public (Tr. 23). While the ALJ found that the claimant was not capable of returning to her past relevant work, the ALJ concluded that there was relevant work in the economy she could perform, *i. e.*, housekeeping cleaner, packager, and food production. (Tr. 31). Thus, the ALJ found that the claimant was not disabled (Tr. 31).

## Review

The claimant contends that the ALJ erred in the following ways: i) by failing to fully and fairly develop the record; ii) by failing to properly analyze her RFC at step four; and iii) by failing to propose a proper hypothetical to the vocational expert at the hearing. The undersigned Magistrate Judge finds the claimant's second contention persuasive.

The claimant was examined by state physician Dr. Wojciech L. Dulowski, M.D. on January 30, 2006 (Tr. 245-50). The claimant suffered a hemorrhagic stroke in 2001 (Tr. 245). The claimant complained of weakness on the right side of her body, that she was unable to stand for long periods of time, and that she had difficulty remembering things (Tr. 245). Dr. Dulowski noted that the claimant was "very depressed and very

tearful" (Tr. 245). Upon examination, Dr. Dulowski noted that the claimant's strength was slightly weaker on the right side of her body and that she had weak heel and toe walking on the right side (Tr. 246). His assessment was that the claimant suffered from right side weakness, status pose hemorrhagic stroke, hypertension, not very well controlled, hyperlipidemia, major depression, and general anxiety disorder (Tr. 246).

State examining physician Dr. Robert L. Spray, Jr., Ph.D. conducted a Mental Status Examination and Evaluation of Adaptive Functioning of the claimant on March 6, 2006 (Tr. 253-56). The claimant related that she had a difficult childhood as her father was an alcoholic (Tr. 253). After conducting a series of exercises related to intellectual functioning, Dr. Spray estimated that the claimant's IQ was 80 to 85 (Tr. 255). Dr. Spray diagnosed adjustment disorder and vascular dementia secondary to stroke (Tr. 253).

State reviewing physician Dr. Cynthia Kampschaefer completed a Psychiatric Review Technique (PRT) on March 20, 2006 in which she found that the claimant had a psychological or behavioral abnormality associated with a dysfunction of the brain as evidenced by memory impairment, which she attributed to vascular dementia (Tr. 259). In addition, Dr. Kampschaefer found that the claimant had a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, evidenced by sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking and generalized anxiety characterized by apprehensive expectation (Tr. 261, 263). Dr. Kampschaefer found that the claimant had mild limitations in activities of daily living and maintaining social functioning and moderate

limitations in maintaining concentration, persistence, and pace (Tr. 268). Dr. Kampschaefer also completed a Mental Residual Functional Capacity Assessment in which she found that the claimant was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, and the ability to maintain attention and concentration for extended periods (Tr. 272).

Dr. Patricia J. Walz, Ph.D. evaluated the claimant on two occasions. The first evaluation occurred on January 23, 2007 (Tr. 285-89). Dr. Walz noted that the claimant's attitude was glum, her mood was sad, and her affect was flat (Tr. 287). The claimant reported problems with her memory, and Dr. Walz opined that she was intellectually functioning in the borderline to low average range (Tr. 288). Dr. Walz thought that the claimant had cognitive defects related to her stroke and diagnosed her with mild vascular dementia with depression (Tr. 288). Dr. Walz wrote that the claimant's "concentration and memory impairment would interfere with her ability to function well" (Tr. 288). Dr. Walz recommended further evaluation of her concentration impairments and a neuropsychological evaluation, and she opined that the claimant would not be capable of managing funds without assistance (Tr. 288-89).

Dr. Walz evaluated the claimant a second time on July 21, 2009 (Tr. 340-45). The claimant reported that she had been clawing herself since her husband's death and exhibited paranoid thinking (Tr. 341). Dr. Walz noted that the claimant looked haggard and tired, she was very sad and depressed, and her affect was sad and she sobbed throughout the exam (Tr. 343). Dr. Walz again opined that the claimant's intellectual

functioning was in the borderline to low average range (Tr. 343). Dr. Walz diagnosed the claimant with grief reaction and vascular dementia with anxiety and depression, mild to moderate, and she assessed the claimant's GAF to be a 45-50 (Tr. 344). Dr. Walz further stated that the claimant's cognitive issues would cause her difficulty in understanding and retaining complex information (Tr. 344).

State examining physician Dr. Traci L. Carney, D.O. examined the claimant on August 8, 2009 (Tr. 346-52). The claimant was found to have normal range of motion in all of her joints, and the examination as a whole was unremarkable (Tr. 349-52). State reviewing physician Dr. J. Marks-Snelling completed a Physical Residual Functional Capacity Assessment on September 9, 2009 (Tr. 357-64). Dr. Marks-Snelling found that the claimant was capable of occasionally lifting up to 20 pounds, frequently lifting up to 10 pounds, standing or walking for six hours in an eight-hour workday, and sitting for six hours in an eight-hour workday (Tr. 358).

State reviewing physician Dr. Janice B. Smith, Ph.D. completed a Mental Residual Functional Capacity Assessment on September 2, 2009 in which she found that the claimant was markedly limited in her ability to understand and remember detailed instruction, carry out detailed instructions, and interact appropriately with the general public (Tr. 353-55). Dr. Smith's written comments reveal that she thought the claimant was capable of performing simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, and adapt to a work situation (Tr. 355). Dr. Smith opined that the claimant could not related to the general public (Tr. 355).

On February 21, 2011, Dr. Spray performed a second psychological evaluation on the claimant (Tr. 413). Dr. Spray found that the claimant's IQ was possibly in the borderline range and wrote that "[s]he has problems with short-term immediate memory and delayed recall" (Tr. 415). Dr. Spray's diagnoses included dysthymia, panic disorder, NOS, vascular dementia, mild, and bereavement (Tr. 416). Based on the clinical interview and mental status examination, Dr. Spray completed a form entitled "Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue, and Hysterical Paralysis" (Tr. 417). Dr. Spray found that the claimant had severe limitations in the following functional categories: i) understanding detailed or complex instructions; ii) remembering detailed or complex instructions; iii) carrying out detailed or complex instructions; iv) avoiding undue construction of interests; v) demonstrating reliability; vi) and behaving in an emotionally stable manner (Tr. 417-19). Further, Dr. Spray opined that the claimant had marked limitations in the following functional categories: i) relating to coworkers; ii) interacting with supervisors; iii) dealing with work stresses; iv) functioning independently; v) maintain attention for extended periods of time; vi) maintaining concentration for extended periods of time; vii) performing activities within a schedule; viii) maintaining regular attendance; ix) sustaining an ordinary routine without special supervision; x) working in coordination or proximity to others without being distracted by them; xi) completing a normal workday (without interruptions from psychologically-based or pain-related symptoms; xii) completing a normal workweek (without interruptions from psychologically-based or pain-related symptoms; xiii)

performing at a consistent pace; xiv) performing without an unreasonable number or length of rest periods; xv) responding and adjusting to the use of new and unfamiliar tools and/or machines; xvi) accepting instructions and responding appropriately to criticism from supervisors; and xvii) getting along with coworkers or peers without distracting them or exhibiting behavioral extremes (Tr. 417-19).

Finally, Dr. Terry Hoyt, D.O., of SMH Family Medicine completed a Physical Residual Functional Capacity Evaluation in which he found that the claimant could sit for one to two hours, stand for one hour, and walk for 30 minutes in an eight-hour workday (Tr. 422). In addition, Dr. Hoyt found that the claimant could continuously or frequently lift 5-10 pounds, occasionally lift up to 25 pounds, and carry five pounds continuously (Tr. 423). Dr. Hoyt opined that the claimant should never push/pull, work in extended position, work above shoulder level, or work overhead, and that she should only rarely bend, stoop, crouch and climb stairs but never squat, crawl, kneel, balance, or climb ladders or scaffolds (Tr. 423-24). Finally, Dr. Hoyt found that the claimant should completely avoid unprotected heights, dangerous moving machinery, handling vibrating tools, and exposure to extremes and sudden or frequent changes in temperature or humidity (Tr. 424).

The claimant's contention that the ALJ failed to properly evaluate all the medical evidence is premised upon evidence submitted to the Appeals Council after the hearing. The Appeals Council must consider such additional evidence if it is: (i) new; (ii) material; and, (iii) "related to the period on or before the date of the ALJ's decision." *Chambers v.*

*Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The parties do not address whether the evidence submitted by the claimant after the administrative hearing qualifies as new, material and chronologically relevant, but the Appeals Council considered it, and the Court therefore has no difficulty concluding that it does qualify.

First, evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The evidence submitted by the claimant to the Appeals Council clearly was new evidence. Both the Physical Residual Functional Capacity Evaluation completed by Dr. Hoyt and the Psychological Evaluation and accompanying Residual Functional Capacity Secondary to Mental Impairments, Including Pain, Fatigue and Hysterical Paralysis from Dr. Robert L. Spray, Ph.D. were neither duplicative nor cumulative because they were not presented to the ALJ prior to his decision. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). In other words, the evidence must "reasonably [call] into question the disposition of the case." *Id.*; *see also, Lawson v. Ch*ater, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). For example, the mental health evaluation performed by Dr. Spray seems to suggest that the claimant's mental functioning was in decline, which comports with the three prior consultative mental examinations performed on claimant prior to the ALJ's decision. Dr. Spray's

initial exam, performed in March 2006, resulted in a diagnosis of adjustment disorder with depressed mood and vascular dementia, mild (Tr. 255). Additionally, Dr. Walz's first examination in January 2007 revealed that the claimant had a GAF of 55-60. By the time Dr. Walz examined the claimant again on July 21, 2009, her GAF was 45-50 and her vascular dementia with anxiety and depression was described as mild to moderate (Tr. 344). Further, Dr. Walz noted that the claimant had difficulty with sustaining concentration on basic tasks (Tr. 344). Finally, the evidence is chronologically relevant when it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Although both evaluations occurred subsequent to the ALJ's decision, the evaluations also occurred prior to the claimant's date last insured.

Since the evidence presented by the claimant after the administrative hearing *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b) and the Appeals Council considered it, such evidence "becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). In light of this new evidence, the Court finds that the ALJ's decision is not supported by substantial evidence for several reasons.

First, the ALJ's written decision denying benefits does not address either the consultative examination performed by Dr. Spray or the physical evaluation completed by Dr. Hoyt. Though neither of these physicians qualified as one of the claimant's

-11-

treating physicians and their opinions were therefore not entitled to controlling weight, the ALJ is still required to analyze the proper weight to give them by applying "all of the factors provided in [s] 404.1527." *Id.*, *quoting Watkins*, 350 F.3d at 1300, *quoting* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate *every* medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give *any* medical opinion.") [internal citation omitted] [emphasis added], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). The ALJ had no opportunity to perform this analysis, and while the Appeals Council considered the new evidence, they failed to analyze it in accordance with the aforementioned standards. The decision of the Commissioner must therefore be reversed and the case remanded to the ALJ for further proceedings.

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for a proper analysis of Dr. Spray's and Dr. Hoyt's opinions. On remand, the ALJ should reconsider both opinions in accordance with the appropriate standards and determine what impact, if any, such reconsideration has on the claimant's ability to work.

**Conclusion**

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 5th day of September, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma